UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEUNG UI KIM,<br><br>        Plaintiff,<br><br>    v.<br><br>JEH JOHNSON, et al.,<br><br>        Defendants. | Case No. 14-cv-02336-HSG<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 29 & 30 |

Before the Court are the cross-motions for summary judgment filed by Plaintiff Seung Ui Kim ("Plaintiff"), Dkt. No. 29 ("Pl.'s Mot."), and Defendants Jeh Johnson, Lori Scialabba, John Kramar, and Robin Barrett ("Defendants"), Dkt. No. 30 ("Defs.' Mot."). Plaintiff appeals the denial of his naturalization application by Defendants, who are officials of the Department of Homeland Security and the United States Citizenship and Immigration Service ("USCIS"). In the event that the Court denies him naturalization, Plaintiff requests declaratory relief providing that he need not terminate his current lawful permanent residence to apply for adjustment of status.

The Court has carefully considered the arguments of the parties, both in their written submissions and during the hearing held on August 6, 2015. For the reasons set forth below, the Court **GRANTS** Defendants' motion for summary judgment and **DENIES** Plaintiff's motion for summary judgment. Accordingly, the Court **DISMISSES WITH PREJUDICE** Plaintiff's petition for review of denial of naturalization application and terminates this entire action.

**I.     BACKGROUND**

This case arises from USCIS's denial of Plaintiff's application for naturalization. Plaintiff has a complicated history with USCIS and its predecessor agency, the Immigration and Naturalization Service ("INS"), that is integral to resolving the motions pending before the Court.

Because Plaintiff does not dispute Defendants' account of those facts, the Court largely recites that narrative here. In light of the complex nature of the immigration law regime, these facts are interwoven with relevant legal concepts.

### A. Plaintiff's 1995 Family-Based Immigrant Visa Petition

"An alien needs an immigrant visa to enter and permanently reside in the United States." *Scialabba v. Cuellar de Osorio*, 134 S. Ct. 2191, 2197 (2014) (plurality opinion). "[L]awful permanent residents of the United States may petition for certain family members—spouses, siblings, and children of various ages—to obtain immigrant visas." *Id.* at 2196. "The road to obtaining any family-based immigrant visa begins when a sponsoring . . . [lawful permanent resident] files a petition on behalf of a foreign relative[.]" *Id.* at 2197. That foreign relative is known as the petition's "principal beneficiary." *Id.* at 2196. "Once visas become available, [the principal beneficiary] must separately file [a] visa application[.]" *Id.* at 2198. "[A] consular official reviews the documents and, if everything is in order, schedules in-person interviews." *Id.* "Each approved alien must then travel to the United States within a set time, undergo inspection, and confirm her admissibility." *Id.* at 2199. "When, but only when, an alien with an immigrant visa is approved at the border does she finally become [a lawful permanent resident.]" *Id.*

On March 1, 1990, Plaintiff's mother, a lawful permanent resident of the United States, filed a petition with the INS under 8 U.S.C. § 1153(a)(2) sponsoring Plaintiff for a family-based immigrant visa. AR 233. Section 1153(a)(2) makes "the unmarried son[] . . . of an alien lawfully admitted for permanent residence" eligible for an immigrant visa. The INS approved the petition on March 23, 1990. AR 223. Before filing a separate visa application, however, Plaintiff married Maria Rosario Alanis ("Alanis") in Paranaque, Philippines in May 1994. AR 212; Kim Dep. 47:14-15. Plaintiff had two children with Alanis: Samantha Kim, born on March 30, 1994, AR 206, Kim Dep. 32:9-10; and Sebastian Kim, born on April 21, 1995, AR 208, Kim Dep. 32:17-18.

On September 12, 1995, Plaintiff filed his immigrant visa application at the U.S. Embassy in Manila, Philippines. AR 229-32. On his visa application, Plaintiff stated his marital status was "Single (Never married)," and where asked to provide the name of his spouse, Plaintiff wrote "not applicable." AR 229; Kim Dep. 118:22-119:1. Where asked on the application to provide the

name, date and place of birth, and addresses of all children, Plaintiff again wrote "not applicable." *Id.*; Kim Dep. 119:15-20. Plaintiff answered "no" to a question on the application asking, in part, whether he was "an alien who seeks or has sought a visa, entry into the United States, or any U.S. immigration benefit by fraud or misrepresentation." AR 231. Before a U.S. Consular Officer at the embassy, Plaintiff signed his signature attesting that the contents of his visa application were true and complete. AR 232; Kim Dep. 117:17-25. Plaintiff did not inform the Consular Officer that he was married. Kim Dep. 116:3-5. Plaintiff also acknowledged on a separate form that he fully understood he would lose his right to benefit from the immigrant status of his parent if he married prior to his admission at a port of entry into the United States. AR 276.

On February 26, 1996, the State Department issued Plaintiff an immigrant visa as the unmarried son of a lawful permanent resident. AR 228. The INS admitted Plaintiff to the United States as such on April 22, 1996, and registered him as a permanent resident. AR 227-8. At that time, Plaintiff again acknowledged he would lose his right to benefit from the immigrant status of his parent if he had married before entering the United States. AR 281; Kim Dep. 122:11-17.

### B. Plaintiff's 2001 Naturalization Application

To become a citizen, a lawful permanent resident must apply for naturalization. 8 C.F.R. § 316.4(a); *see also* 8 U.S.C. § 1427 (naturalization requirements). Plaintiff filed his naturalization application with the INS on May 7, 2001. AR 198-201. On his application, Plaintiff admitted that he was married to Alanis and that he had two children. AR 199. But Plaintiff also answered "no" to the question of whether he had ever given false testimony for the purpose of obtaining any immigration benefit. AR 200. Plaintiff attested that the contents of his application were true and correct. AR 201. An INS officer interviewed Plaintiff on January 14, 2002. *Id.* At the interview, Plaintiff stated that he married Alanis on January 17, 1997. AR 196, 199. Plaintiff also stated that while he listed his children on his naturalization application, he did not list them on his immigrant visa application because he did not understand the question. AR 199.

Following the naturalization interview, the INS requested that Plaintiff provide additional information regarding his marriage and children, including marriage and birth certificates. AR 210. In response, on February 26, 2002, Plaintiff provided a signed declaration admitting to not

3

being truthful regarding his marriage to Alanis. AR 211. In his declaration, Plaintiff admitted that he married Alanis in 1994, but that the person who performed the wedding told him that the marriage could not be registered in the Philippines. AR 211. As a result, Plaintiff stated he "therefore believed for many years that our 1994 wedding was invalid." *Id.* However, Plaintiff also stated that he and Alanis "lived as a married couple, and even had a second child." *Id.* In his declaration, Plaintiff discussed the family-based visa petition pending at the time of his marriage, explaining that "I knew that I would not be able to immigrate unless I were single, and therefore I was happy with my mistaken belief that I was not truly married." *Id.* Plaintiff admitted that when he immigrated in 1996, he did not disclose his marriage, and that he also omitted mentioning his children from his visa application "because I did not want to arouse suspicion." *Id.* Plaintiff also admitted to discovering that his 1994 marriage to Alanis was actually registered. *Id.*

The INS denied Plaintiff's naturalization application on December 30, 2002. AR 195-97. The INS concluded that Plaintiff had not met the requirement of having been lawfully admitted for permanent residence because at the time he entered the United States as the unmarried son of a lawful permanent resident, he was in fact married and thus ineligible for such status. AR 196. In addition, the INS determined that Plaintiff had not met the good moral character requirement of naturalization because he provided false testimony during his naturalization interview. *Id.*

### C. Plaintiff's 2009 Adjustment of Status Application

Plaintiff obtained a judgment of divorce from Alanis on September 30, 2003. AR 150-52. On January 16, 2004, Plaintiff married Lilibeth Mamauag Agra ("Agra"). AR 148. Agra became a U.S. citizen on September 9, 2008, AR 147, and filed a petition sponsoring Plaintiff for a family-based immigrant visa under 8 U.S.C. § 1151(b)(2)(A)(i) on April 9, 2009, AR 144-45. Plaintiff concurrently filed an adjustment of status application. AR 105-08. "An alien already in the United States . . . must obtain 'adjustment of status' rather than an immigrant visa to become a lawful permanent resident." *Scialabba*, 134 S. Ct. at 2197, n.1 (citing 8 U.S.C. § 1255(a)). On the application, Plaintiff answered yes to the question, in relevant part, "have you, by fraud or willful misrepresentation of a material fact, ever sought to procure, or procured, a visa[]?" AR 107.

On July 27, 2009, a USCIS officer interviewed Plaintiff regarding his adjustment of status

application. AR 108. Plaintiff affirmed his response to the above question and added that he married the mother of his first two children in a church but was told it would not be registered when it actually was, thus affirming that he was married when he entered the United States as an unmarried son of a lawful permanent resident. AR 107-08. On July 31, 2009, USCIS approved both Agra's sponsoring petition and Plaintiff's adjustment of status application. AR 105, 144.

### D.     Plaintiff's 2012 Naturalization Application

Plaintiff filed the naturalization application now at issue with USCIS on October 4, 2012. AR 30-39. Where asked on the application if he had ever given false or misleading information to any U.S. Government official while applying for any immigration benefit, Plaintiff answered yes. AR 37. Plaintiff also answered yes on the application when asked if he had ever lied to any U.S. Government official to gain entry or admission into the United States. *Id.* On December 14, 2012, a USCIS officer interviewed Plaintiff regarding his application. AR 39. Plaintiff affirmed his responses to the above questions and added that he previously entered as an unmarried son of a lawful permanent resident, but in fact was married. AR 37, 39.

USCIS denied Plaintiff's application on May 17, 2013. AR 44. USCIS reasoned that Plaintiff had not met the requirement of having been lawfully admitted for permanent residence because, at the time he entered the United States, he was ineligible for such status. AR 47. Furthermore, USCIS concluded that because Plaintiff was already a permanent resident at the time USCIS approved his 2009 adjustment of status application, and because he had not abandoned such status or had it cancelled, the 2009 adjustment was granted in error. *Id.* On January 28, 2014, following a hearing on its decision to deny Plaintiff's naturalization application, USCIS affirmed its decision on the same bases, as well as Plaintiff's inadmissibility for misrepresenting material facts in order to obtain his 1996 immigrant visa. AR 1-6.

### E.     Plaintiff's Instant Petition for Review

Plaintiff filed a petition for review of denial of naturalization application in this Court on May 20, 2014. Dkt. No. 1. Plaintiff and Defendants filed cross-motions for summary judgment on June 11, 2015. They each filed opposition briefs, Dkt. No. 35 ("Defs.' Opp.") & Dkt. No. 36 ("Pl.'s Opp."), and they each replied, Dkt. No. 37 ("Pl.'s Reply") & Dkt. No. 38 ("Defs.' Reply").

1  Plaintiff contends that Defendants improperly denied his 2012 naturalization application because
2  Defendants waived his inadmissibility when they granted his 2009 adjustment of status without
3  requiring him to file a waiver application. Defendants respond that it was Plaintiff's burden to
4  request a waiver and that implied waiver is not possible under the immigration legal framework.

## II.  LEGAL STANDARD

### A.  Judicial Review of Denial of Naturalization

"A person whose application for naturalization . . . is denied, after a hearing before an immigration officer[,] may seek review of such denial before the United States district court for the district in which such person resides[.]"  8 U.S.C. § 1421(c).  District courts conduct a review of the denial of a naturalization application *de novo* and make their own findings of fact and conclusions of law.  *Id.*; *United States v. Hovsepian*, 359 F.3d 1144, 1163 (9th Cir. 2004) (en banc) (immigration agency not entitled to any factual or legal deference on review).  The Federal Rules of Civil Procedure govern proceedings for admission to citizenship unless exempted.  Fed. R. Civ. P. 81(a)(3); *see also Khuc v. United States Citizenship & Immigration Servs.*, No. 13-cv-04377, 2015 WL 981653, at *2 (N.D. Cal. Mar. 3, 2015) (applying the Federal Rules).

### B.  Summary Judgment

Summary judgment is appropriate if, viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmoving party, there are no genuine dispute of material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 321 (1986).  The district court "does not assess credibility or weigh the evidence, but simply determines whether there is a genuine factual issue for trial." *House v. Bell*, 547 U.S. 518, 559–60 (2006).  A fact is "material" if it "might affect the outcome of the suit under the governing law," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and a dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable trier of fact to decide in favor of the nonmoving party, *id.*  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  *Id.*

The moving party bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact.  *Celotex*,

477 U.S. at 323. Where the moving party will bear the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for herself. *Id.* at 325. But on an issue for which the nonmoving party will bear the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.* If the moving party meets its initial burden, the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, "specific facts showing that there is a genuine issue for trial." *Id.* To show a genuine dispute in response, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

## III. DISCUSSION

The parties agree about the facts of this case. *See* Pl.'s Opp. at 2. Namely, Plaintiff admits that he defrauded the INS by lying about his marriage to Alanis to secure his 1995 immigrant visa. Pl.'s Mot. at 2. The parties also agree that under well-established statutory law, Plaintiff's fraud raised a permanent bar to naturalization unless the bar was waived or otherwise terminated by USCIS. *See* Pl.'s Opp. at 3. Accordingly, the purely legal question before the Court is whether USCIS removed that admissibility bar when it granted Plaintiff's 2009 adjustment of status application. The Court finds that USCIS did not waive Plaintiff's inadmissibility for the reasons set forth below. Additionally, the Court in its discretion declines to enter a declaratory judgment in favor of Plaintiff decreeing him eligible to file for adjustment of status as a lawful permanent resident.

### A. USCIS Properly Denied Plaintiff's 2012 Naturalization Application

To explain why USCIS properly denied Plaintiff's naturalization application, the Court begins with first principles. The Immigration and Naturalization Act sets forth three requirements for naturalization: (1) continuous residence for at least five years and physical presence for at least half that time in the United States "after being lawfully admitted for permanent residence"; (2) continuous residence following application; and (3) good moral character. 8 U.S.C. § 1427(a). There is no dispute that Plaintiff currently meets the second and third criteria for naturalization; what the parties dispute is whether Plaintiff is "lawfully admitted for permanent residence."

7

The statute defines "lawfully admitted for permanent residence" as a term of art: it means "the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws." 8 U.S.C. § 1101(a)(20). In light of that definition, the Ninth Circuit has made clear that "lawfully" modifies "admitted" in a material manner. *Monet v. INS*, 791 F.2d 752, 753 (9th Cir. 1986). Specifically, "[a]dmission is not lawful if it is regular only in form. The term 'lawfully' denotes compliance with substantive legal requirements, not mere procedural regularity[.]" *Id.* (quoting *In re Longstaff*, 716 F.2d 1439, 1441 (5th Cir. 1983)). In other words, an alien's admission on a visa to which she was not entitled confers no lawful status on the alien. *Id.* (citing *Lai Haw Wong v. INS*, 474 F.2d 739, 741 (9th Cir. 1973)).[1] The fact that an alien whose application was improperly granted submitted that application in good faith is irrelevant. *Segura v. Holder*, 605 F.3d 1063, 1066-67 (9th Cir. 2010). This issue is critical to the naturalization process because "[e]xcept as otherwise provided in this subchapter, no person shall be naturalized unless he has been lawfully admitted to the United States for permanent residence in accordance with all applicable provisions[.]" 8 U.S.C. § 1429.

Plaintiff concedes that his 1995 admission for permanent residence was not "in accordance with the immigration laws" because he was undisputedly married when he filed his immigrant visa petition. Pl.'s Mot. at 2; *see also* 8 U.S.C. § 1153(a)(2)(B) (immigrant visas are authorized for the unmarried sons of lawful permanent residents). For that reason, Plaintiff also concedes that he was not "lawfully admitted for permanent residence" in connection with his 1995 immigrant visa. Pl.'s Opp. at 2. But Plaintiff argues that he became lawfully admitted when USCIS approved his application for adjustment of status in 2009 on a new visa petition. *Id.*; *see also* 8 U.S.C. § 1151(b)(2)(A)(i) (immigrant visas are authorized for spouses of citizens).

In support of this argument, Plaintiff contends that 8 U.S.C. § 1255 permits aliens who reside in the United States to apply for adjustment of status to lawful permanent residents without leaving the country and restarting the foreign consular process. Section 1255(a) provides that:

---

[1] While *Monet* was decided in the context of deportation proceedings, as opposed to the denial of a naturalization application, neither Plaintiff nor the Court has identified any reason why that context would change the definition of this term of art, which expressly applies to Section 1427(a).

8

> "The status of an alien who was inspected and admitted . . . into the United States . . . may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed."

8 U.S.C. § 1255(a).[2]  Plaintiff argues that, as an undisputedly inspected and admitted alien, Section 1255 authorized him to apply for adjustment of status to lawful permanent resident in connection with his current wife's petition sponsoring him for a spousal-based immigrant visa.

To qualify for adjustment of status under Section 1255, however, an alien must also show be "eligible to receive an immigrant visa" and be "admissible" for permanent residence.  Where an alien "has procured" a visa "by fraud," she is "inadmissible," and thus "ineligible to receive visas and ineligible to be admitted to the United States[.]"  8 U.S.C. §§ 1182(a), 1182(a)(6)(C)(i); *accord Cervantes-Gonzales v. INS*, 244 F.3d 1001, 1004 (9th Cir. 2001).  Consequently, that alien generally cannot naturalize.

Plaintiff admits that he committed fraud to procure his 1995 visa and does not dispute that, as a result, he became "inadmissible."  *Id.*  But because USCIS exercised its discretion to grant Plaintiff adjustment of status despite knowledge of his fraud, he claims that USCIS waived his inadmissibility.  To show a legal basis for that waiver, Plaintiff points to 8 U.S.C. § 1182(i)(1), which provides "[t]he Attorney General may, in the discretion of the Attorney General, waive the application of [a bar for fraud] in the case of an immigrant who is the spouse . . . of a United States citizen . . . if it is established to the satisfaction of the Attorney General that the refusal of admission to the United States of such immigrant alien would result in extreme hardship to the citizen[.]"  Although Plaintiff did not expressly seek a waiver, because USCIS "never requested [Plaintiff] file an application for a waiver of admissibility," Plaintiff argues that waiver was necessarily granted by his approved adjustment of status.  Pl.'s Mot. at 3.  As a result, Plaintiff

---

[2] USCIS represents that although the statute accords authority to the Attorney General, when the INS ceased to exist as an independent agency under the United States Department of Justice, many of its relevant functions were transferred to the United States Department of Homeland Security. *See* Homeland Security Act of 2002, Pub. L. No. 107-296, 100 Stat. 2135 (Nov. 25, 2002). Plaintiff does not dispute that the Department of Homeland Security had jurisdiction here.

1   contends that he became a lawful permanent resident and thereby met his final prerequisite for
2   naturalization.
3       USCIS responds that it granted Plaintiff's adjustment of status in error because it could not
4   have waived Plaintiff's bar to admissibility without him filing a waiver application.  Defs.' Opp. at
5   4.  In support of that position, USCIS points to 8 C.F.R. § 212.7(a)(1), which provides that "an
6   applicant for . . . adjustment of status . . . who is inadmissible under any provision of section
7   [1182(a)] for which a waiver is available under section [1182(a)] may apply for the related waiver
8   by filing the form designated by USCIS, with the fee prescribed in 8 CFR § 103.7(b)(1), and in
9   accordance with the form instructions."  USCIS posits that an implied waiver is impossible under
10  this regulation because a waiver applicant must make a showing of "extreme hardship" to the
11  applicant's citizen-spouse to be eligible under 8 U.S.C. § 1182(i)(1).  In addition, USCIS notes
12  that 8 C.F.R. § 245.1(f) explicitly contemplates that an applicant for adjustment of status who is
13  inadmissible must file a concurrent waiver application because "an application under this part
14  shall be the sole method of requesting the exercise of discretion under section[ 1182(i)] of the Act,
15  as [it] related to the inadmissibility of an alien in the United States."  And, in any case, USCIS
16  argues that it never made any express finding of waiver.
17      Plaintiff replies that although 8 C.F.R. §§ 212.7(a)(1) and 245.1(a) require a formal waiver
18  application, the statute itself does not.  Pl.'s Reply at 1-2; *see also* 8 U.S.C. § 1182(i).  Even the
19  regulations, Plaintiff continues, do not use mandatory language to describe use of the waiver
20  application.  *See* 8 C.F.R. § 212.7 ("Any alien who is inadmissible . . . *may* apply for the related
21  waiver by filing the form designated by USCIS . . . .") (Plaintiff's emphasis).  Plaintiff argues that
22  the waiver form itself at times uses permissive language.  *See* Defs.' Opp., Ex. 2 at 1 ("Who *may*
23  file this form"; those inadmissible for fraud "*may* seek a waiver by filing this application")
24  (Plaintiff's emphasis).  With respect to the fact that Plaintiff never made the required showing of
25  "extreme hardship" for his citizen-spouse that theoretically underlies the grant of a waiver under
26  Section 1182(a), Plaintiff argues that the language of Section 1182(a) requires only that USCIS is
27  "satisfied" that the burden is met to grant a waiver.  But regardless of whether a waiver application
28  was required by law, Plaintiff's position is that USCIS cannot now withdraw its approval of his

10

adjustment of status application. And, because "[n]o court shall have jurisdiction to review a decision or action of the Attorney General regarding a waiver under [Section 1182(a)]," Plaintiff posits that the Court cannot review USCIS's adjustment of status decision. *See* 8 U.S.C. § 1182(i)(2).

The dispositive issue in this case is whether USCIS's decision to grant Plaintiff adjustment of status accorded him lawful permanent resident status. In the Ninth Circuit, when USCIS provides an immigration benefit that does not accord with substantive law, the benefit is never "lawfully" provided. This principle was first set forth in *INS v. Monet*, which concerned an alien who lawfully entered the United States as a visitor, overstayed, and then successfully adjusted his status to a lawful permanent resident under Section 1255. 791 F.2d at 753. The INS subsequently moved to deport him because, before he had entered the United States, he was convicted of a drug trafficking crime in a foreign country that should have barred his adjustment of status. *Id.* He concealed that fact when he entered the United States and when he applied for adjustment. *Id.* The deportee moved for a discretionary waiver of deportation under a now-repealed statutory provision for aliens who had been "lawfully admitted" and had domiciled in the United States for seven years, which the Board of Immigration Appeals denied. *Id.* The Ninth Circuit affirmed the decision because his adjustment of status was legally invalid in light of his past drug trafficking conviction and, therefore, he was never "*lawfully* admitted." *Id.* The fact that the INS exercised its discretion under Section 1255 to adjust his status was irrelevant because he was never eligible under Section 1255 to benefit from that discretion. *See id.*

The Ninth Circuit subsequently clarified that *Monet* set forth a very broad rule. In *Kyong Ho Shin v. Holder*, the Ninth Circuit explained that *Monet* "deem[ed] all grants of [lawful permanent resident] status that were not in substantive compliance with the immigration laws to be void ab initio." 607 F.3d 1213, 1217 (9th Cir. 2010). And in *Segura v. Holder*, the Ninth Circuit held that lack of substantive compliance was evaluated wholly without reference to the good faith of the alien applicant. 605 F.3d at 1066-67. Taken together, these cases offer little, if any, breathing room for aliens to defend their receipt of an improper immigration benefit.

In light of these cases, it is clear that Plaintiff's adjustment of status alone did not make

him a lawful permanent resident *de jure*, despite the procedural regularity of the decision.  This outcome may seem counterintuitive because a discretionary adjustment of status is the very process by which an alien who was previously "admitted" without substantive legal compliance becomes "lawfully admitted."  But *Monet* and *Shin* instruct that even discretionary adjustment of status decisions must comply with underlying legal requirements to be lawful.  That is precisely the situation that was presented to the Ninth Circuit in *Monet*.  Plaintiff attempts to distinguish his case on the ground that he fully disclosed his past misconduct to USCIS when he applied for adjustment of status.  But that argument cannot prevail in light of *Segura*'s holding that an alien applicant's good faith is irrelevant to whether USCIS's decision to grant an immigration benefit complied with substantive law.  Accordingly, because Plaintiff was inadmissible as a result of his prior fraud at the time he applied for adjustment of status, USCIS's decision to adjust his status in its discretion was unlawful, unless it also concurrently waived that inadmissibility.

There is no dispute, however, that USCIS never made any express finding of waiver.  No doubt recognizing that fact, Plaintiff argues that USCIS waived his bar to admissibility *de facto* and *sub silencio*.  There is no evidence to support that finding.  USCIS's regulations make clear that Plaintiff was required to affirmatively apply for a waiver of his bar to admissibility when he applied for adjustment of status by completing a designated form and paying a certain fee.  *See* 8 C.F.R. §§ 212.7(a)(1) and 245.1(a).  It is undisputed that Plaintiff never did so.  The Court cannot find a silent waiver-in-fact given these express application requirements.  *See Mtoched v. Lynch*, 786 F.3d 1210, 1217 (9th Cir. 2015) (holding that an alien who applied for a waiver but failed to concurrently apply for adjustment of status was ineligible to receive a waiver).

The use of permissive language in 8 C.F.R. § 212.7—"[a]ny alien who is inadmissible . . . *may* apply for the related waiver by filing the form designated by USCIS"—does not change the analysis.  The word "may" likely means only that such aliens are not required to submit an application and pay a substantial fee under pain of some additional penalty.  If the regulation used mandatory language, then inadmissible aliens arguably would be required to apply for a waiver even if they did not want to do so, an outcome that neither party suggests.  Inadmissible aliens may instead remain inadmissible at their election.  If USCIS had in fact made an express finding

12

of waiver despite Plaintiff's failure to submit a waiver application, the analysis might be different. But the Court does not need to reach the question of whether USCIS is permitted to find a waiver without an application because those are not the facts here. Similarly, USCIS did not remove the application requirement by not affirmatively instructing Plaintiff that he needed to apply. There is no such duty written into the law, and the Court declines to imply one. And significantly, USCIS in effect *did* instruct Plaintiff to apply via 8 C.F.R. §§ 212.7(a)(1) and 245.1(a).

For all of these reasons, Defendants are entitled to summary judgment on the denial of Plaintiff's naturalization petition, notwithstanding USCIS's own flawed decision to approve Plaintiff's 2009 adjustment of status application.[3]

### B.   The Court Declines to Issue the Requested Declaratory Judgment

In the alternative, Plaintiff requests that the Court grant summary judgment on his request for a declaratory judgment that he need not terminate his current lawful permanent resident status in order to again apply for adjustment of status to lawful permanent resident. Essentially, Plaintiff asks the Court to reach the question of whether 8 U.S.C. § 1255 permits adjustment of status for aliens physically present in the United States who are not in deportation proceedings.

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). Because the Supreme

---

[3] USCIS also argues that Section 1255(a) does not apply to aliens outside of the context of removal proceedings. Nothing about Section 1255 suggests it was unavailable to Plaintiff, who was "inspected and admitted" within the meaning of the statute. *See Matter of Quilantan*, 25 I. & N. Dec. 285, 288 (2010) (holding that an alien is "admitted" where there was procedural regularity regarding entry). In fact, 8 C.F.R. § 245.1(a) provides that "[a]ny alien who is physically present in the United States, except for an alien who is ineligible . . . under paragraph (b) or (c) of this section, may apply for adjustment of status[.]" USCIS does not contend that Plaintiff is ineligible under those provisions. Logically, adjustment of status, which is "merely a procedural mechanism by which an alien is assimilated to the position of one seeking to enter the United States," *Matter of Rainford*, 20 I. & N. 598, 601 (1992), would apply with equal force to an alien like Plaintiff who had to proceed through the foreign consular process when he first sought to enter the United States. *See Monet*, 791 F.2d at 753 (alien admitted without substantive compliance adjusted his status under Section 1255 without objection). But the Court need not, and thus does not, reach this unsettled question to decide this case, given its conclusion that USCIS did not waive its requirement that Plaintiff file a waiver application.

Court has held that district courts have sufficient jurisdiction to decree whether an alien is eligible for a discretionary immigration benefit, *McGrath v. Kristenson*, 340 U.S. 162, 169-70 (1950), the Court concludes that it has jurisdiction to consider whether to award declaratory relief here.

But "[t]he decision to grant declaratory relief is a matter of discretion, even when the court is presented with a justiciable controversy." *United States v. State of Washington*, 759 F.2d 1353, 1356 (9th Cir. 1985) (per curiam) (internal citations omitted); *see also Wilton v. Seven Falls Co.*, 515 U.S. 277, 288-89 (1995) (holding that the decision to award declaratory relief lies within the discretion of district courts "because facts bearing on the usefulness of the declaratory judgment remedy, and the fitness of the case for resolution, are peculiarly within their grasp"). "In determining whether the decision to grant declaratory relief is proper, [courts] consider both the circumstances of the parties and the sound jurisprudence of the court." *Washington*, 759 F.2d at 1357. "Declaratory relief should be denied when prudential considerations counsel against its use, and the decision to grant declaratory relief should always be made with reference to the public interest." *Id.* (citing *Pub. Affairs Assoc., Inc. v. Rickover*, 369 U.S. 111, 112 (1962) (per curiam)).

The Court exercises its discretion to decline to issue the requested judgment. Even if the Court were to agree with Plaintiff that 8 U.S.C. § 1255 permits Plaintiff to seek adjustment of status, a declaratory judgment to that effect would not settle the naturalization controversy between the parties. USCIS would still have to exercise its discretion to grant Plaintiff a waiver of his statutory inadmissibility under 8 U.S.C. § 1182(i)(1), and concurrently exercise its discretion to grant Plaintiff adjustment of status. More importantly, the Court finds that the public interest would not be served by making a generalized determination with regard to an issue on which the immigration authorities apparently have not issued any kind of formal opinion. Given that the requested declaratory judgment could have wide-reaching and unpredictable ramifications for the immigration system far beyond the instant case, the Court denies Plaintiff's summary judgment motion.

## IV. CONCLUSION

For the foregoing reasons, the Court hereby **GRANTS** Defendants' motion for summary judgment and **DENIES** Plaintiff's motion for summary judgment. The Court therefore **DENIES**

**WITH PREJUDICE** Plaintiff's petition for review of Defendants' denial of his naturalization application and terminates this entire action.  The Clerk of the Court is instructed to close the case.

   **IT IS SO ORDERED.**

Dated: January 5, 2016

HAYWOOD S. GILLIAM, JR.
United States District Judge